ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  5:10CR55 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| ANTHONY G. FOWLER, II | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I.  Introduction**

Defendant Anthony Fowler was indicted on February 2, 2010 for being a felon in possession of a firearm. On April 21, 2010, this Court accepted Fowler's guilty plea and found him guilty. Fowler then appeared before this Court for sentencing on July 7, 2010. This memorandum will serve to supplement the Court's oral pronouncement of sentence.

**II. Sentencing Process**

Criminal sentencing is often described as a three-step process. A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory

guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply. In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

### III. Advisory Guideline Calculations

The base offense level for violations of 18 U.S.C. § 922(g)(1) is 24. U.S.S.G. 2K2.1(a)(2). A two-level reduction was granted for acceptance of responsibility, and the Court granted the Government's request for an additional one-level reduction for the same. Accordingly, the adjusted offense level for Fowler's conduct is 21. Neither the Government nor Fowler objected to the Court's initial guideline calculation.

However, the Court also utilized U.S.S.G. § 4B1.4 to enhance Fowler's sentence, finding him to an armed career criminal. Fowler objected to this conclusion and its resulting offense level of 30 (an enhanced level of 33 before deductions for acceptance of responsibility). The Court found no merit in Fowler's objection for the reasons that follow.

Fowler's objection stems from several recent decisions handed down by the Ohio Supreme Court. In short, the Ohio Supreme Court has found that sentences that were handed down in prior

years that did not properly include the terms of a defendant's postrelease control were void.  In *State v. Simpkins*, 117 Ohio St.3d 420, 421 (2008), that Court held that "in cases in which a defendant is convicted of, or pleads guilty to, an offense for which postrelease control is required but not properly included in the sentence, the sentence is void, and the state is entitled to a new sentencing hearing to have postrelease control imposed on the defendant unless the defendant has completed his sentence."  In a later decision, that same Court declined to retroactively apply a statutory "fix" to this failure to impose postrelease control properly.  *See State v. Singleton*, 124 Ohio St.3d 173, 180 (2009).  Based upon this line of cases, Fowler asserts that his 2001 conviction for attempted aggravated burglary is void and may not be properly used as a predicate for the armed career criminal enhancement.  This Court finds no merit in Fowler's argument.

Fowler's argument regarding the validity of his prior state-court convictions is foreclosed by *Custis v. United States*, 511 U.S. 485 (1994).  In *Custis*, the U.S. Supreme Court was asked to decide "whether a defendant in a federal sentencing proceeding may collaterally attack the validity of previous state convictions that are used to enhance his sentence under the ACCA."  *Id.* at 487.  In resolving the issue, the Court held that a "defendant has no such right (with the sole exception of convictions obtained in violation of the right to counsel) to collaterally attack prior convictions." *Id.*  In arguing before this Court, Fowler asserts that *Custis* "and its progeny authorizes this Court to take judicial notice of judgments that are facially void for lack of jurisdiction."  Doc. 21 at 6. In so arguing, Fowler stretches *Custis* far beyond its holding.

In *Custis*, the defendant sought to challenge the constitutionality of his state-court convictions, asserting that he received ineffective assistance of counsel in one matter and that his plea was not knowing and voluntary in another matter.  The Court described the challenge as one

3

seeking to "extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon*." *Custis*, 511 U.S. at 496. The Court declined to extend such a right.

In an effort to avoid the holding of *Custis*, Fowler asserts that his challenge is jurisdictional in nature, just as the *Custis* Court described the failure to appoint counsel under *Gideon*. Fowler, however, ignores that *Custis* identified a singular Constitutional deprivation that rose to a level that warranted consideration in re-examining state convictions. *Custis* did not identify a category of challenges that were acceptable under the ACCA. It identified a single issue. This Court lacks the authority to expand that exception.

> Finding *Custis* to have superseded [prior Sixth Circuit precedent, *United States v. McGlocklin*, 8 F.3d 1037 (6ht Cir. 1993)], we have subsequently held that a defendant in a sentencing proceeding may not collaterally challenge the use of prior convictions or parole revocations for purposes of criminal history calculation unless the challenge is based upon an alleged violation of the right to counsel. See *United States v. Carter*, 374 F.3d 399, 409 (6th Cir. 2004); *United States v. Bonds*, 48 F.3d 184, 186-87 (6th Cir. 1995).

*United States v. Lalonde*, 509 F.3d 750, 767 (6th Cir. 2007). "Thus, because [the defendant's] challenge to his conviction was not based upon an alleged violation of the right to counsel, the district court was bound by *Bonds* and *Carter* not to allow [the defendant] to collaterally challenge the validity of the conviction at sentencing." *Id.* at 768. As such, even if Fowler were correct that his state court conviction was invalid, this Court must include it in calculating his criminal history category. *Id.*

The Court notes that *Lalonde* considered a directly analogous issue. Therein, the defendant challenged a Kentucky conviction, arguing that his conviction was in direct contravention of a state statute. In rejecting his argument, the Court noted that "no Kentucky

4

court has declared Lalonde's 1989 conviction invalid" and that even under the Court's prior, broader protections under *McLocklin*, "Lalonde's challenge to his conviction could not have been sustained because his challenge was based on state law, not the federal constitution." *Id.*

Fowler seeks to avoid this issue by relying upon the fact that Ohio has deemed its sentences "void" rather than "voidable." The use of this term, however, does not alter the analysis performed by the Court. Contrary to Fowler's assertions, *Watt v. United States*, 162 Fed. Appx. 486 (6th Cir. 2006), does not stand in contradiction to this conclusion. Rather, *Watt* serves to reinforce the fact that a defendant must first have his conviction declared void through state court mechanisms prior to challenging its use in federal court. *Id.* at 493 (detailing the fact that Watt successfully had his conviction vacated *prior* to seeking to challenge its use in his federal sentencing). In that vein, *Watt* did nothing more than restate a finding made in *Custis* and repeated in *Bonds:*

> We recognize… that Custis … may attack his state sentences in Maryland or through federal habeas review. If Custis is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences.

*Custis*, 511 U.S. at 497 (citation omitted); *Bonds*, 48 F.3d at 186 ("In *Custis*, the Supreme Court held that unless there has been a previous ruling that a conviction has been ruled constitutionally invalid, or unless the conviction has been obtained when counsel has not been available or provided, in violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963), a collateral attack on the conviction is not allowed at sentencing."). In the instant matter, there is no dispute that no Ohio court has previously declared Fowler's sentence or conviction to be void.

Furthermore, there is no support for the assertion that the use of the term "void" by Ohio

5

courts somehow alters the fundamental nature of the collateral challenge being raised before this Court.  In support of this argument, Fowler asserts that when a judgment is void on its face due to lack of jurisdiction, there is no need for a "collateral attack" in order to have it set aside.  In support of this argument, Fowler relies upon *Custis*, 511 U.S. at 497.   A thorough review of *Custis* does not reveal this holding or a holding even similar to this proposition of law.  *Custis* created a very narrow exception for challenging prior convictions, allowing challenges if, and only if, *Gideon* had not been faithfully observed.   *Custis* drew no distinctions between void and voidable convictions, and it certainly did not permit a vast array of challenges that would be made for the first time in federal court and that are wholly dependent on state law.  Regardless of the terminology utilized by the Ohio courts, absent an adjudication in a state court that a particular conviction is void, this Court must characterize any challenge as a collateral challenge: to do otherwise would be to ignore the holdings in *Custis*, *Bonds*, and *Lalonde* and greatly expand the challenges currently permitted by precedent.

This latter fact is highlighted by Fowler's sentencing hearing.   During the hearing, Fowler asserted that he was not collaterally attacking his prior conviction, but rather challenging the Government's ability to *prove* the prior convictions.  Fowler did not challenge his two prior federal convictions.  Accordingly, in response to Fowler's argument, the Government offered the judgment of conviction for Fowler's state court conviction.  Fowler's argument in response contends that the conviction does not satisfy the definition of "conviction" because it does not include a sentence.   This reasoning, however, is dependent upon collaterally attacking the judgment of conviction.   The journal entry itself contains all of the information required by Ohio

6

Crim.R. 32(C) to be a valid judgment of conviction.1  Fowler's argument that the journal entry does not contain a valid sentence relies upon an attack on that journal entry.  To find that the journal entry did not contain a valid sentence, this Court would be required to examine Ohio law and apply it to Fowler's judgment of conviction.  This exercise is the very essence of a collateral attack; a process prohibited by *Custis* and its progeny.

Furthermore, even if this Court could expand the holding of *Custis*, the Court declines to do so for the reasons stated below. First, the Court notes that *Custis* declined to permit challenges to prior state convictions that were based in alleged constitutional violations.  As such, there is little doubt that the Supreme Court would decline to permit challenges for alleged technical violations of a state statute.

Finally, Fowler is correct that the issue he seeks to raise is one that is *generally* apparent from a simple review of the state court judgment of conviction and an application of Ohio law to that judgment of conviction.  However, Fowler ignores that not even his type of challenge would always be limited to such a review.  Under Ohio law, judges were required to properly notify defendants of postrelease control during the sentencing hearing *and* in a subsequent journal entry.  As such, Fowler's argument could be made by a defendant based upon a journal entry or a sentencing hearing transcript.  It would soon devolve into the type of fact-specific inquiry that *Custis* specifically found improper under ACCA.  For that matter, if the Court were to offer relief to Fowler, there would no definable boundary to other challenges under ACCA.  Accordingly, the Court declines to extend the holding of *Custis*.  Fowler has not raised a valid challenge to his state

---

1 Accordingly, the Government proved the required three prior felonies necessary to support the ACCA enhancement.

7

court convictions. As such, he is properly found to be an armed career criminal.

Based upon the above, Fowler is properly placed in a criminal history category V as an armed career criminal with an adjusted offense level of thirty. His advisory guideline range, therefore, is 180 to 188 months.[2]

### IV. Kinds of Sentences Available

The final calculated advisory guideline range of imprisonment is 180 to 188 months. The mandatory minimum is 15 years' imprisonment with a statutory maximum of life in prison, a $250,000 fine, and not more than 5 years of supervised release.

### V. Departure

Defendant has not argued for a departure in this matter. Furthermore, the Court finds no grounds to depart.

### VII. Variance and § 3553(a) Factors

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence. Based upon those factors, the Court finds that no variance is appropriate under the facts presented in this matter.

In reaching its conclusion, the Court considered the nature and circumstances of the offense and the history and characteristics of the defendant. The Court must also review the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal

---

[2] Fowler's range would be 151 to 188 months, but he faces a mandatory minimum of 180 months due to his armed career criminal status.

conduct and to protect the public from further crimes of the Defendant; and c) to provide the Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

During the sentencing hearing, the Court detailed its analysis of each of the § 3553(a) factors.  Accordingly, the Court finds it unnecessary to duplicate that analysis herein.

## VII. Sentencing Disparities

The Court has identified no sentencing disparities for similarly situated defendants.

## VII. Conclusion

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, it is the judgment of the Court that the Defendant Anthony Fowler is hereby committed to the Bureau of Prisons for a term of 188 months.  The Court stated the remaining terms of Fowler's sentence on the record and in its journal entry of conviction.  Accordingly, it declines to reiterate those terms herein.

IT IS SO ORDERED.


  July 12, 2010                                         /s/John R. Adams
Date                                                JOHN R. ADAMS
                                                    UNITED STATES DISTRICT JUDGE